```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

   COASTAL DRILLING COMPANY,                    CIVIL ACTION
   L.L.C.

   VERSUS                                       NO: 05-4007

   SHINN ENTERPRISES, INC.                      SECTION: J(2)
```

### ORDER AND REASONS

Before the Court is Plaintiff, Coastal Drilling Company, L.L.C.'s **Motion for Partial Summary Judgment (Rec. Doc. 66).** This motion, which is opposed, is set for hearing on April 2, 2008 with oral argument.  Upon review of the record, the memoranda of counsel, and the applicable law, this Court now finds, for the reasons set forth below, that Plaintiff's motion should be denied.

### Background Facts

Plaintiff Coastal Drilling Company ("Coastal") allegedly entered into a drilling contract with Watson Energy ("Watson") and with Shinn Enterprises ("Shinn") on September 10, 2004.[1] Watson held the lease that enabled the drilling of the well.

---

[1] Watson signed the contract as "Operator" and Coastal as "Contractor."

Coastal performed services and incurred expenses under the contract in October, November, and December of 2004 to prepare for the "spudding" of the well.  Despite repeated requests, Coastal was never paid for the work it performed under the Drilling Contract.

On July 20, 2005 Coastal filed suit against Shinn for damages resulting from Shinn's breach of contract.[2]  Plaintiff filed an amended complaint against Shinn asserting claims in the alternative for Early Termination Compensation as set forth the in the Drilling Contract, and/or recovery for performance actually rendered, and/or for unjust enrichment, and/or for damages in quantum meruit.

Shinn filed an answer along with a third party complaint in February of 2006 against Jack Capella, an officer of Shinn Enterprises, who allegedly executed the Drilling Contract without the authority and/or capacity to bind Shinn.  Shinn therefore alleges that the Drilling Contract is unenforceable as to it.  Shinn seeks full indemnity and/or contribution against Capella, as well as damages for Capella's breach of his fiduciary duty to Shinn.

Presently before the Court is Coastal's motion for partial summary judgment in which Coastal seeks a declaration that Shinn

---

[2] To date, a balance of $1,581,385.13, along with interest and attorneys' fees, remains unpaid under the Drilling Contract.

is bound to the Drilling Contract as there exist no genuine issues of material fact regarding Capella's status as an agent of Shinn with the actual and/or apparent authority to bind Shinn in its contract with Coastal.

## The Parties' Arguments

According to Coastal, Capella was an officer of Shinn at the time the Drilling Contract was executed; specifically, he was serving as Shinn's Secretary/Treasurer and its legal counsel. According to Coastal, Capella enjoyed "substantial discretion and authority as an officer of Shinn" and as such possessed both the actual and apparent authority to bind Shinn to the Drilling Contract.

**A.   Apparent Authority**

As to apparent authority, Coastal cites to Louisiana state law to support its argument that Capella had apparent authority to enter into the Drilling Contract on behalf of Shinn.  Coastal cites Louisiana Civil Code article 3021 which states that "[o]ne who causes a third person to believe that another person is his mandatary is bound to the third person who in good faith contracts with the putative mandatary."  Furthermore, apparent authority arises when the principal has acted so as to give an innocent third party a reasonable belief that the agent had the authority to act for the principal and the third party reasonably relies on the manifested authority of the agent.  <u>Davidson v.</u>

3

State Emps. Group Benefits Program, 481 So. 2d 708, 711 (La. App. 1st Cir. 1985).

According to Coastal, other than in this case, Shinn has never alleged that Capella has exceeded his authority.  It is "common knowledge" in Louisiana that Capella was Mr. Shinn's "right-hand man," and Mr. Shinn has done nothing to dispel this image.  Therefore, according to Coastal, it was reasonable for Coastal to rely on Mr. Shinn's and Shinn Enterprises' representations that Capella was "their emissary of the highest order, capable of contracting and negotiating . . . investments on their behalf."

Furthermore, Coastal points out that "a defense interposed by a corporation that its agent had no authority to execute a contract on its behalf is looked upon with disfavor, especially where the contract has been executed in whole or in part." Morgan v. Cedar Grove Ice Co., 41 So. 2d 521, 523 (La. 1949).  In this case, the Drilling Contract has been executed in whole but the balance has been due and owing for nearly three years.

In opposition, Shinn argues that the Drilling Contract is governed by U.S. Maritime Law, according to the choice of law provision contained within the contract.  As a result, the question of whether Capella had the authority to execute the contract must be considered under that context, and not under

4

Louisiana law.[3]

Shinn goes on to explain, by way of background, that Capella was hired by Shinn to act as its in-house legal counsel and in other executive management capacities. Shinn received a proposal from Watson through Capella whereby Shinn would acquire the rights, security, and creditor position of Watson's largest creditor (Mirant Americas Energy Capital) in exchange for a discounted payment to Mirant. Shinn was to be repaid by Watson, secured by interests in virtually all of Watson's oil and gas properties. Also upon the advice of Capella, Shinn purchased the position of Mirant. Additionally, upon Capella's advice, Shinn purchased a promissory note held by Union Planters Bank. Then, allegedly unbeknownst to Shinn, Capella (through a newly created entity) entered into a consulting agreement with Watson whereby he stood to personally profit. Capella was granted an overriding royalty in all wells drilled in a particular area, including the Watson Energy State lease well (which is alleged to be the subject of the Coastal Drilling Contract).

Capella, purportedly on behalf of Shinn, and Richard Watson, purportedly on behalf of Watson Energy, apparently executed the Drilling Contract with Coastal. Shinn allegedly was completely unaware of the existence of both the consulting agreement and the

---

[3] Shinn notes that if this Court chooses to apply Louisiana law, the outcome is the same.

Drilling Contract.  Additionally, Shinn was unaware that Capella had a direct financial interest in the drilling of any well under the Drilling Contract.

As to the apparent authority argument specifically, Shinn states that this argument must fail because Coastal's own President, Chris McClanahan, who negotiated the Drilling Contract, has testified that he did not believe Capella had the authority to execute the Drilling Contract without express permission from Mr. Shinn.  Furthermore, under maritime law, apparent authority cannot be evidenced by statements of an agent alone.  Here, there is no evidence that Shinn Enterprises or Mr. Shinn represented to Coastal that Capella had any authority to execute the Drilling Contract.  In fact, Mr. Shinn testified that he did not even know about the contract.  As a result, the available evidence provides no indication that the principal, Shinn, conferred apparent authority on Capella through any clear representation to Coastal.

**B.  Actual Authority**

As to actual authority, Coastal argues that Capella had implied actual authority from Mr. Shinn and Shinn Enterprises to execute the Drilling Contract.  "To create an agency relationship based on actual authority, such authority must have been delegated to the agent either by words that expressly or directly authorize him to do a delegable act, or such authority may be

implied from the facts and circumstances attending the transaction in question." Wells Fargo Business Credit v. Ben Kozloff, Inc., 695 F.2d 940, 944 (5th Cir. 1982). "Implied agency is created when the agent is deemed to have permission from the principal and undertakes certain acts which are reasonably related to the agent's position and which are reasonable and necessary concomitants of the agent's express authorization." AAA Tire & Export, Inc. v. Big Chief Truck Lines, Inc., 385 So. 2d 426, 429 (La. App. 1st Cir. 1980).

According to Coastal, Capella as an officer of Shinn was given the actual authority to broker an investment between Shinn and Watson. Furthermore, he authorized transfers of Shinn's assets to Watson for ongoing operations. Therefore, even if Shinn did not grant Capella specific explicit permission to retain the services of Coastal, the services provided pursuant to the Drilling Contract were aimed at preserving the value of Shinn's investment in Watson, a deal which Capella was granted the actual authority to broker. In other words, Capella's attempts to preserve the value of Shinn's investment are "reasonably related to his executive position" and were "reasonable and necessary concomitants of his express authorization" from Shinn.

In opposition, Shinn states that even Capella has testified that he needed to obtain Mr. Shinn's direct authority, and

further, that Mr. Shinn has testified that he never granted such authority to Capella.[4]  Thus, the available evidence makes clear that Shinn did not grant authority to Capella to execute the Drilling Contract, or at the very least, that material facts are severely in dispute.

## Discussion

The only issue before the court is whether Capella had the authority to bind Shinn to the Drilling Contract.

Without deciding what law applies, Louisiana or maritime, it is not clear to this Court whether Shinn made any representations as to any authority possessed by Capella to sign the Drilling Contract.  Coastal makes reference to the fact that Shinn did not do anything to "dispel the image" that Capella was Mr. Shinn's "right-hand-man."  However, this does not equate to a "manifestation"[5] of Capella's authority by Shinn so as to amount to the existence of apparent authority.  Furthermore, Coastal's own President, Chris McClanahan, who negotiated the Drilling Contract, has testified that he did not believe Capella had the

---

[4]  During the July 16, 2007 deposition of Capella, Capella testified that he received express authority from Mr. Shinn.  Mr. Shinn's testimony contradicts this evidence however.  At the very least, Capella's testimony reflects, according to Shinn, that he knew he had to obtain Mr. Shinn's authority to sign the Drilling Contract.

[5]  A principal's manifestations of its agent's authority need not be made in any particular form in order to bind the principal.  La. Civ. Code art. 2993.

authority to execute the Drilling Contract without express permission from Shinn, creating at the very least, a genuine issue of material fact, considering the conflicting testimony that exists.

As to actual authority, Mr. Shinn's testimony that he did not authorize the signing of the Drilling Contract stands in direct contrast to Capella's testimony that he did possess Mr. Shinn's authority to so sign.  As a result, a genuine issue of material fact exists as to actual authority as well.  Accordingly,

**IT IS ORDERED** that **Motion for Partial Summary Judgment (Rec. Doc. 66)** is hereby **DENIED.**

**IT IS FURTHER ORDERED** that oral argument set for Wednesday, April 2, 2008 is hereby **CANCELLED.**

New Orleans, Louisiana, this 28th day of March, 2008.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE